# Richmond

## E. L. MARSH, TRADING AS GROWERS PRODUCE COMPANY V. THE PENNSYLVANIA RAILROAD COMPANY.

January 12, 1933.

Present, All the Justices.

The opinion states the case.

*J. Brooks Mapp* and *B. Drummond Ayres,* for the plaintiff in error.

*Stewart K. Powell* and *George R. Allen,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

The plaintiff in error, who was the plaintiff in the lower court, instituted an action, by notice of motion, against the defendant in error for damages, occasioned by the theft of 170 barrels of potatoes which had been loaded in a box car cn a sidetrack of the defendant's railroad. At the conclusion of the evidence introduced by the plaintiff, a motion was made to strike it out. The court sustained the motion, and excluded the plaintiff's evidence; the jury found a verdict for the defendant, and the judgment here under review was entered.

There are two counts in the notice of motion. In the first one, the defendant was sought to be held liable as a

common carrier, or insurer, but the plaintiff, at the trial abandoned this count and it needs no further consideration.

In the second count, the defendant was sought to be held liable as a warehouseman and on this count alone, the parties went to trial. In this count the defendant was charged with negligence and the failure to exercise ordinary care, in general terms. Whereupon the defendant asked for a bill of particulars and specifically requested that the plaintiff state of what act of negligence the defendant was guilty which caused the loss of the potatoes, in what respect did it fail to discharge its duty to the plaintiff, and wherein did the defendant fail to do or perform any duty that was the proximate cause of the loss. Whereupon the plaintiff filed a bill of particulars, but did not specify of what act of negligence the defendant was guilty, which caused the loss. It was just as general in its terms as the notice of motion. It specified no negligence on the part of the defendant.

A statement of the facts, which are not in dispute, will be given.

The plaintiff, on July 10, 1929, ordered a box car from the agent of the railroad company, to be placed on a siding at Onley, Virginia. The car was placed, and on July 11th the plaintiff's agent began to load it with potatoes. The loading was completed on July 16th. One hundred and ninety-three barrels of potatoes had been loaded in the car and it was sealed by an agent of the railroad company, but the plaintiff gave no billing or shipping instructions to the agent of the railroad company and paid it no freight, and the car remained on the siding until July 22nd. On the 20th of July the plaintiff ordered his agent to break the seal, enter the car and inspect the contents for rotten potatoes and in obedience to that order, the said agent broke the seal and entered the car and found rotten potatoes in some of the barrels. This agent afterwards told the agent of the railroad company that he had broken the seal and entered the car, and instructed him to seal it again, but it does not

appear that it was sealed again. On the 22nd of July, the plaintiff, intending to re-grade the potatoes in the car and to remove the barrels in which the rotten potatoes were packed, sent his agent to the car for that purpose and when he arrived, he discovered that 170 barrels of the potatoes had been stolen from the car. A claim was made upon the standard and approved form, provided by the defendant, and duly signed by the plaintiff, describing the loss as "170 barrels Irish potatoes stolen out of car * * *," at $4.00 per barrel, the market price, aggregating $680.00 and after due consideration, the railroad company refused to pay the claim and this action followed.

Of course, in viewing the evidence, upon a motion to exclude it, as we must do here, we must view it in a light favorable to the plaintiff. This principle is so well defined, so specifically and completely treated and applied, by Mr. Justice Epes, in the recent case of *Green* v. *Smith*, 153 Va. 675, 151 S. E. 282, that it is only necessary to refer to that case, without quoting therefrom. In our discussion we will bear in mind that the case at bar is before us on a motion to strike the plaintiff's evidence, which the trial court sustained, and the test as laid down in *Green* v. *Smith*, *supra*, will be applied.

As previously stated the plaintiff is not seeking to hold the railroad company liable as a carrier or insurer. He bases his entire case upon the contention that the railroad company is liable to him as a warehouseman.

Two propositions of law arose upon the motion to strike the plaintiff's evidence: (1) whether or not there had been a complete delivery of the potatoes to the railroad company prior to the theft, and (2) if there had been a delivery, whether or not the company had been shown to be guilty of actionable negligence in the care and custody of the potatoes. We express no opinion upon the first proposition stated, further than to say that the evidence shows that the custody and control of the potatoes, during the time the car was being loaded and until the loading was entirely com-

pleted by the plaintiff's agent, was with the plaintiff. However, the decision of this case will be founded upon the second proposition stated. If it is assumed that a completed delivery was made to the railroad company, was it guilty of any actionable negligence in its control of the potatoes?

As we have seen, a recovery against the railroad company, if any, must be rested upon its liability as a warehouseman. What was its liability, under the evidence of this case, as a warehouseman? In answering this question, resort must be had to the general principles of the law governing the liability of warehousemen. Those principles have been well established and settled in this country by a long line of well considered cases from nearly all jurisdictions.

It is well settled, that in the absence of a special contract, an ordinary warehouseman is not an insurer against theft, and cannot be held liable for loss of the property by this means without negligence on his part. *Firestone Tire and Rubber Co.* v. *Pacific Transfer Co.,* 120 Wash. 665, 208 Pac. 55, 26 A. L. R. 217 and note at page 224.

The railroad company, in the case at bar, was liable only in case it was negligent. The burden of proving the negligence was upon the plaintiff. The potatoes were stolen out of the car while it was on the sidetrack and that fact appeared from the plaintiff's own evidence, but it alone, does not create a *prima facie* presumption of negligence or lack of care and the court will not assume, in the absence of proof, that the theft of the potatoes was the result of negligence. *Southern Ry. Co.* v. *Prescott,* 240 U. S. 632, 36 S. Ct. 469, 60 L. Ed. 836; *Claflin* v. *Meyer,* 75 N. Y. 260, 31 Am. Rep. 467.

By referring to the notice of motion it will be found that no specific act of negligence was alleged. This also applied to the bill of particulars. The evidence simply shows the loss of the potatoes by theft. It entirely fails to show any negligence or want of care on the part of the railroad company. It was essential that the plaintiff in this case, not only specifically allege negligence but also prove it.

The plaintiff, in his petition, takes the position, that inasmuch as the railroad company left its siding unguarded, while the car in question, along with fifty-five other loaded cars were stored there and has made no effort to explain the theft or loss of the potatoes, it was, as a matter of law, guilty of negligence; or that those facts should, at least, have been submitted to the jury for them to determine whether there was negligence. We do not agree with this position. It implies that a railroad company is under a duty to guard all loaded cars which may be stored on its sidetracks. The situation did not present a case which demanded extraordinary and unusual precaution. Aside from this, however, the danger of loss by theft, if any existed, was just as open and obvious to the plaintiff as it was to the railroad company and if he was aware of any such danger he should have warned the railroad company. The evidence, however, fails to show that either the plaintiff or the railroad company had any reason to believe that there was any danger of loss by theft. It simply does not show that any such danger existed. The evidence shows that the car was being loaded by the agent of the plaintiff for five days, and that he left the car door open and unlocked each night, which was customary.

The principal case relied upon by the plaintiff, in support of the proposition that the case should have been submitted to the jury is *Kansas City, etc., Ry. Co.* v. *Cox*, 25 Okla. 774, 108 Pac. 380, 381, 32 L. R. A. (N. S.) 313. The main question there was whether there had been such a delivery to the railroad company, as would render it liable as a common carrier. The lower court held, as a matter of law, that the company was liable as a carrier, but upon appeal it was held that the company's liability was that of a warehouseman. The facts in that case as shown by the opinion are: * * * "there was evidence introduced at the trial reasonably tending to prove that on the 26th or 27th of January, 1906, pursuant to the order of the plaintiff, a car was placed upon the sidetrack by the defendant at a broom corn plat-

form erected by the defendant on the east side of one of its sidetracks, for the purpose of enabling shippers to conveniently and easily load the car with broom corn; that on the next day Mr. Greenlee, acting as the agent for the plaintiff, loaded some broom corn in said car. On the next day, to-wit, the 28th day of January, six more bales were loaded. On the 29th day of January, more broom corn, enough to finish the carload, was loaded into the car, after which the door to the car was closed. After finishing loading the car, the plaintiff, or the party employed by him to do the loading, closed the door of the car, and notified Mr. Cox, the plaintiff, that the car was loaded, but did not notify the agent of the company that the car was loaded, and did not give the agent any information as to the destination of the car or the name of the consignee. The last time that Mr. Cox saw the car was Saturday, January 27th, about noon, at which time the car was all loaded except fifteen bales. Cox did not notify the agent of the company that the car was loaded, nor did he notify him who the consignee of the car was to be, or where it was to go. The railway company had not issued a bill of lading, and Cox had not paid the freight. Cox had been for some time shipping broom corn from Fairview, and it was his custom when the cars were loaded to notify the agent that they were loaded, and give him the name of the consignee, the route the car was to take, and its destination; but none of these things had been done with reference to this car. The car was destroyed by fire about 2 o'clock in the morning of January 30th, the facts up to that time being as above stated. We are of the opinion that this evidence was sufficient to carry the case to the jury."

The court concluded with this correct statement of the law: "The relation of common carrier and shipper not having arisen, the railway company's liability was that of warehouseman, and it was only liable for failure to exercise ordinary care. * * *" It thus appears that the lower court erred, in holding as a matter of law, that the company was

liable as a carrier and the case was sent back for a new trial on the question of the liability of the company as a warehouseman, in which trial it was necessary for the plaintiff to show lack of due care on the part of the company in order to recover. Of course, it follows that if in the new trial before the jury the evidence tended to show that the fire resulted from the lack of ordinary care on the part of the company, its liability, if any, was a jury question. This, we think, is a fair interpretation of the opinion. This case does not hold that negligence of the company would be inferred from the fact that the broom corn was destroyed by fire in one of its cars, or that proof of the fire and nothing else, made a *prima facie* case and shifted the burden to the company to show that it had exercised ordinary care in the custody of the car.

In the case at bar, we are of opinion that negligence was not shown against the Pennsylvania Railroad Company and that it could not be inferred from proof of the fact that the potatoes were stolen. The failure to plead and prove negligence against the railroad company was fatal to the plaintiff's case and the judgment will be affirmed.

*Affirmed.*