# 𝔚𝔶𝔱𝔥𝔢𝔟𝔦𝔩𝔩𝔢

## SOUTHERN PACKING CORPORATION V. M. W. CRUMPLER.

June 10, 1940.

Record No. 2223.

Present, All the Justices.

The opinion states the case.

*Charles L. Kaufman* and *J. Davis Reed, Jr.,* for the plaintiff in error.

*Charles B. Godwin, Jr.,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

M. W. Crumpler obtained a judgment in the Circuit Court of the city of Norfolk against Southern Packing Corporation for $735.16 on account of an alleged breach of contract. The plaintiff in error now contests the validity of the judgment and contends that it is not supported by the evidence.

Crumpler filed his notice of motion against the packing company claiming damages by reason of its failure to carry out its agreement. It was alleged that on January 3, 1936, the parties entered into a contract for the sale and purchase of certain meat. The packing company agreed to sell and Crumpler agreed to buy 143 dressed hogs weighing 24,753 pounds at a price of fifteen cents per pound, including the federal processing taxes. The meat was delivered to Crumpler and he paid for it as agreed, including the processing taxes of 2.97 cents per pound. It was further alleged in the notice that it was agreed between the parties "in the event the laws relating to processing taxes on meat were declared unconstitutional the defendant (the packing company) was to pay back to the plaintiff (Crumpler) the full amount of the processing taxes upon said meat; * * *

that shortly after the purchase and payment for said meat the said processing taxes were declared unconstitutional by the Supreme Court * * * ; that the defendant has not paid the plaintiff," etc.

The case was tried by the court without a jury and the judgment now complained of resulted.

The sale of the meat was made through one Alex Gottlieb, an agent and regular employee of the packing corporation. The sole defense to the action in the trial court and sole ground for the attack on the judgment here was that the agent had no authority to agree on behalf of his principal to return the processing taxes to Crumpler in event such taxes were later declared unconstitutional by the Supreme Court. They were declared unconstitutional just three days after the sale was made.

We must determine the duties and powers of the agent Gottlieb. He was paid a salary of $50 per week, and had been with the packing company for four years. He bought meat on the hoof and made collections. He also bought dressed meat selected by himself and made sales of meat, adjusting the weights with the customers when necessary. He did most of the buying and selling for the firm. He actually delivered the meat that he sold and collected the price. The meat in question was sold and delivered by him by truck to Crumpler, who had dealt with Gottlieb for two seasons. In fact, he knew no person connected with the packing company other than Gottlieb, and through him had had all of his transactions with the packing company.

It was the custom of meat sellers in the particular locality at the time of the sale in question to agree to return the processing taxes to the buyers where the taxes had been included in the purchase price, if later they should be declared unconstitutional by the Supreme Court.

When Crumpler called upon the packing company to pay him the amount of the processing taxes there was no denial at that time of Gottlieb's authority to make the agreement to return the amount of the taxes to Crumpler. In fact, the packing company never denied the authority of Gottlieb to

make the contract until after action had been brought against it.

■ Gottlieb was an agent of the packing company with actual authority to buy, sell, and deliver meat and to collect the purchase price. In this connection he possessed the power to bind his principal to return the processing taxes under the conditions mentioned. In other words, the agent, in agreeing to return the processing taxes upon the happening of the named event, in effect did no more than fix a conditional price for the meat. He certainly possessed the power, either actual or apparent, to make a price for the meat, and having this power we think he also had the apparent authority to fix it conditionally.

■ The third headnote in the case of *Lysle Milling Company* v. *Holt & Company*, 122 Va. 565, 95 S. E. 414, clearly states the rule applicable: "While, as between principal and agent, the scope of the latter's authority is that authority which is actually conferred upon him by his principal, which may be limited by secret instructions and restrictions, such instructions and restrictions do not affect third parties ignorant thereof; and as between the principal and agent and third persons, the mutual rights and liabilities are governed by the apparent scope of the agent's authority, which is that authority which the principal has held the agent out as possessing, or which he has permitted the agent to represent that he possesses, and which the principal is estopped to deny. The apparent authority, as far as third persons are concerned, is the real authority, and when a third person has ascertained the apparent authority with which the principal has clothed the agent, he is under no obligation to inquire into the agent's actual authority."

See also, *Bardach Iron & Steel Company* v. *Charleston Port Terminals*, 143 Va. 656, 129 S. E. 687; *Home Beneficial Association* v. *Clark*, 152 Va. 715, 148 S. E. 811; *Royal Indemnity Company* v. *Hook*, 155 Va. 956, 157 S. E. 414.

We are of opinion that the judgment of the lower court is correct and should be affirmed.

*Affirmed.*